**Shirley McLARTY, d/b/a Plastex Molding Co., Plaintiff,**

v.

**JONES PLASTIC CO., Erik E. Erikson, Inc., and Erik E. Erikson, Individually, Defendants.**

Civ. A. No. 17180.

United States District Court
E. D. Michigan, S. D.
March 26, 1959.

Joseph W. Farley, Detroit, Mich., Cecil L. Wood, Fort Worth, Tex., for plaintiff.

Robert A. Sloman, Detroit, Mich., for defendants.

O'SULLIVAN, District Judge.

This is an action for infringement of a claimed patent, for injunctive relief and for damages and costs consequent upon the claimed infringement. Plaintiff Shirley McLarty was the patentee of Patent No. 2,797,510, and plaintiff National Banner Company has the exclusive sales rights to the device which is the subject matter of the patent. Defendant denies the validity of the patent in question, asserting that the claimed invention was anticipated by the prior art and by public use of the components that make up the patented product, and deny infringement.

The subject matter of the patented article is described in the patent as an advertising spinner or fluttermill. It is a plastic device made up of two propellers and a center section to be strung on a cable, and designed to whirl in the wind as a means of attracting patronage at gas stations, used car lots and similar merchandising enterprises. It is made up in units of ten with varying bright colors, and the blades of each unit are so pitched as to cause the device to whirl when activated by the wind. The patentee, Shirley McLarty, is an engineer who has worked in plastics for some years. Plaintiff National Banner Company is a Dallas, Texas, concern marketing various advertising devices and had, previous to the putting together of the McLarty device, marketed various devices not unlike it, but which were crudely designed and were found to be less suitable and salable as an advertising medium. Interested in finding a better product, National Banner Company suggested to McLarty the creation of something of the general nature of the previous devices, but one that would be a better and more marketable one. In the year 1955, McLarty went to work to make the product that was ultimately patented. He perfected his device toward the end of 1955 and, through National Banner Company, commenced the sale thereof. The new device met with immediate success.

Application for the patent ultimately obtained was filed by McLarty on February 26, 1956, and his patent was issued on July 2, 1957. The patent and its claims are described as follows:

"This invention relates to advertising media and more particularly to a wind actuated spinner adapted to be suspended, with like devices, on a cable adjacent a place of business to gain the attention of prospective patrons.

"It has long been the practice of persons dealing in certain types of merchandise, notably used automobiles, to create a carnival air about their premises by the ostentatious display of varicolored flags, pennants and other devices, usually strung on a cord or cable well above the ground to attract attention. These displays have become highly popular and some bladed, wind propelled devices for such use have been made in plastic and suspended on a cable as an attraction. However, it has been found that constant rotation of these devices on a cable, sometimes at high speed, soon wears out the bushing in the device through which the suspension cable passes.

"It is the object of this invention to provide a novel form of wind actuated advertising spinner.

"Another object of the invention is to provide a bladed display device formed with a center section equipped with a bearing constituting a part of this invention and designed to resist wear on the center section of the device.

"Another object of the invention is to provide a bearing composed of axially aligned nylon bushings about which is molded the hub in the center section of the display device, the said bushings rotatably embracing a suspension cable and held against endwise displacement by like bushings of a different type of plastic material surrounding the cable, one contiguous with the outer end of each nylon bushing which latter, in turn, being restricted in its longitudinal displacement by a metal clip fastened to the cable on each side of the display device.

"Other objects will appear as the description proceeds when considered with the annexed drawing wherein:

"Fig. 1 is a perspective view of a display device and center bearing constructed according to the invention.

"Fig. 2 is a side elevational view.

"Fig. 3 is an exploded perspective view of the bearing assembly per se and

"Fig. 4 is a fragmentary view of the device on a larger scale showing the bearing assembly in longitudinal cross section.

"Continuing with a more detailed description of the drawing, reference numeral 10 denotes generally the advertising spinner which is of molded plastic, preferably polystyrene, to form a circular center section 11 and diametrical wings or blades 12 which are arranged at a proper angle to be deflected by wind to cause the device to turn on the suspension cable 13.

"The center section 11 is formed with a peripheral ring 14 and a plurality of progressively smaller concentric rings 15 and a series of radial ribs 16 (Fig. 1). These rings and ribs are both ornamental and functional in that they properly reinforce the center section to prevent warping or distortion in extremely hot weather and consequently prolong the usefulness of the device.

"Each blade 12 has a peripheral rib 17 and a series of straight ribs 18 on each side thereof which extend from the center section 11 outwardly in divergent relationship toward the far edges of the blades 12. These ribs also are both ornamental and functional like the rings 15 and ribs 16 of the center section 11.

"The body of the device 10 is injection molded and in the process, a hub 19 is formed whose length is greater than the overall thickness of the center section. To produce the bearing in the hub 19, a nylon bushing 20 is set in the mold in which the spinner 10 is formed, one in each end of the cavity producing the hub 19, with their adjacent or inner ends in abutting relationship. The hot plastic flows about these bushings, and against the circular heads 21 of the latter and when the spinner is released from the mold the bushings 20 are firmly embedded in the hub 19.

"The cable 13 is passed through the bushings 20 in the manner shown in Fig 4 and a pair of like bushings or sleeves 22 is threaded onto the cable, one on each side of the spinner 10 and each with its circular head 23 bearing against or in juxtaposition to the head 21 of an adjacent bushing 20. Adjacent the outer end of each bushing or sleeve 22 is a metal clip 24 of cylindrical shape which is pinched or dimpled onto the cable 13 to prevent its longitudinal displacement and to preclude like displacement of the spinner 10 itself.

"The spinners 10 are made preferably of different bright colored plastic and are spaced apart on the cable 13 which is strung between

suitable supports well above the ground. The wind strikes the blades 12 of the spinners 10, causing the latter to turn on the cable and attract the attention of passersby by their animation and coloring.

"The nylon bearing formed by the axially aligned bushings 20 and the associated elements in their particular relationship shown and described permits the spinner to rotate freely and for longer periods of time than if the polystyrene hub 19 were in direct contact with the cable 13.

"Manifestly, the construction as shown and described is capable of some modification and such modification as may be construed to fall within the scope and meaning of the appended claims is also considered to be within the spirit and intent of the invention.

"What is claimed is:

"1. As a new article of manufacture, an advertising spinner adapted for rotation on a cable comprising a plastic body having a circular center section and radial blades, a hub formed integrally in said center section having an axial bore, a nylon bushing extending into each end of said hub, the inner ends of said bushings being in juxtaposition within said hub and rotatably embracing said cable, a retaining bushing embracing said cable adjacent the outer end of each of said nylon bushings and a clip secured to said cable on each side of said spinner to hold the latter against longitudinal displacement on said cable.

"2. As a new article of manufacture, an advertising spinner comprising a plastic body having a circular center section and radial blades, a hub formed integrally in said center section having an axial bore, a nylon bushing extending into each end of said hub, and the inner ends of said bushings being in juxtaposition within said hub, a cable extending through said bushings for rotatably supporting said spinner and means engaging said bushings on each side of said spinner to hold the latter against longitudinal displacement on said cable.

"3. The structure of claim 2, in which the means engaging said bushings consists of a sleeve embracing said cable, one on each side of said spinner and a clip secured to said cable adjacent the outer end of each of said sleeves.

"4. As a new article of manufacture an advertising spinner comprising a plastic body having a center section, a hub in said center section, a bushing anchored in each end of said hub and extending into contiguity at the mid-section of said hub, a cable extending through said bushings and means engaging said cable adjacent the outer end of each of said bushings to hold said spinner against longitudinal movement on said cable.

"5. The structure of claim 4 in which said center section is formed with a plurality of concentric rings between its periphery and said hub and a series of radial ribs extending from said hub to said periphery to reinforce said center section.

"6. The structure of claim 4 in which the bushings each has a head of diameter substantially equal to that of said hub and in juxtaposition with an end of said hub and a sleeve surrounding said cable and engaging the head of an adjacent bushing at each end of said hub.

"7. The structure of claim 6 and a metal clip fastened to said cable at the outer end of each of said sleeves.

"8. In combination with a cable, an advertising spinner rotatably supported on the cable and comprising a plastic body having a circular center section and a pair of diametrically opposed blades extending radially outwardly from the center section, a hub formed integrally with the center section and having axial bore,

and a bearing comprising a bushing received in the bore for engagement with the cable, and means secured to the cable on opposite sides of the spinner for engagement with the spinner to prevent longitudinal displacement thereof with respect to the cable.

"9. An advertising spinner as described in claim 8 in which the bearing comprises a plurality of preformed sections which collectively form a bushing having flanged end portions, the bearing being formed of self lubricating material having the characteristics of nylon and having the body of the spinner molded thereon."

After the first examination of the patent application, the examiner, on or about October 26, 1956, denied the application, setting forth his findings as follows:

"This application has been examined.

"References made of record:

| "Zimmerman | 722,070 | Mar 3, 1903 | 46–56x |
| Appelman | 1,586,641 | June 1, 1926 | 46–55 |
| Schroeter | 2,560,133 | July 10, 1951 | 308–238 |
| Thomson | 2,675,283 | Apr 13, 1954 | 308–238 |
| Ross, et al | 2,728,154 | Dec 27, 1955 | 40–39 |

"Claims 4, 5, 6 and 7 are rejected as unpatentable over Ross in view of Zimmerman and Schroeter. Ross discloses a spinner (15) mounted on a cable and prevented from sliding along the cable by metal clips (31). It is evident that spinner (A), Fig 8, of Zimmerman may be mounted on a cable. Schroeter discloses flanged bearings (13), Fig. 6. Providing the Zimmerman spinner (A) with the bearings (13) of Schroeter and placing the spinner on the cable of Ross is not considered to involve invention. In claim 5, the use of concentric rings and radial ribs on a spinner is clearly shown to be old by Zimmerman (Fig 4). In claim 6 the use of a sleeve on each side of a spinner is an old expedient as is shown by way of example by Appelman.

"Claims 1, 2 and 3 are rejected as claim 4 and in view of Thomson. Thomson discloses bearings made of nylon, and to merely make the bearing of Schroeter of nylon is not considered to involve invention.

"No claim is allowed."

On or about March 25, 1957, McLarty, through his attorney, requested reconsideration of the case, adding two additional claims designated 8 and 9, which are the claims 8 and 9 appearing in the patent. McLarty, through his attorney, also filed petition to make special the patent application. This petition called attention to the then existing asserted infringement by one or more of the defendants in this cause as the reason for special consideration being granted. Several corrections and amendments to the petition followed and it was ultimately granted. Notice of allowance of the patent was mailed on May 10, 1957, and issued on July 2, 1957, with all nine of the claims allowed.

In marketing the device which is the subject matter of the patent, McLarty and National Banner Company adopted the name "Whirlaway" as descriptive of their device. No trade mark in this regard was registered and while plaintiffs' complaint makes no charge of, nor seeks relief on account of unfair competition, plaintiffs' reply brief filed prior to trial, charges unfair competition on the part of defendants in the claimed appropriation of plaintiffs' device and the use of the name "Whirlie Girlie" to identify the accused device of defendants.

The character, design and function of plaintiffs' device can best be understood by examination of a drawing of it as

contained in the patent, a copy of such drawing being attached hereto as a part of this opinion. Broadly, it might be described as a two-bladed spinner with an overall dimension of approximately sixteen inches from end to end, with a circular center section of about four inches in diameter, a hub with a nylon bearing and a bore to permit the spinner to rotate upon a cable axle. It also has retaining bushings on each side of the nylon bearing and a clip on each side of the spinner to prevent longitudinal displacement of the spinner on the cable.

July 2, 1957     S. McLARTY     2,797,510

ADVERTISING SPINNER OR FLUTTER MILL

Filed Feb. 27, 1955

Shirley McLarty
INVENTOR

BY

ATTORNEY

McLarty Patent

The accused device of defendant is an obvious appropriation of plaintiffs' device. In the defendant's first product there were some slight departures from the general plan of plaintiff's device, but such departures did little to detract from it being an imitation of plaintiff's device. In the course of the manufacturing and marketing of defendant's device, additional changes were made, but without substantial departure from the scheme and plan of plaintiff's spinner and its method of operation.

■ Defendants offered evidence of prior use and sale of advertising spinners used for the same purpose as the plaintiff's patented spinner. There is no question but that all of these were rather crude predecessors of the better appearing, safer and possibly more efficient device produced by McLarty. All of these, however, had a common function and purpose, to wit: a spinner that would rotate on a cable when activated by the wind with a method of securing each unit from longitudinal displacement. Some of these used a metal bearing instead of nylon, some used aluminum sleeves in which to house the cable, none used plastic with all of the principal parts molded together, including the nylon bearing, as was the case in plaintiff's device. This Court, however, is satisfied that the use of nylon as a bearing was not new, either as a component of advertising spinners or generally as a bearing. Undisputed testimony disclosed that the Detroit Plastic Corporation had for five or six years prior to the time of hearing of this case in October, 1958, manufactured and sold for use as a bearing on screen door hinges, a nylon bearing identical in shape with the nylon bearing used by McLarty in his spinner. A trade journal entitled, "Super Service Stations" was identified as a journal in general circulation and acceptance by operators of service stations. In its issue of March, 1954, this publication advertised a device called "Whirl Way—Bi Flector." This was a smaller device evidently designed to be used on the front of automobiles. It had propeller blades, a center section, a nylon bear-

ing, and was designed to rotate when activated by the air currents generated by a moving automobile. It, of course, was not a device designed for the identical purpose of McLarty's device. It was smaller, but, except for the cable, its specifications could be translated into claim 8 of the plaintiff's patent, including the use of a self-lubricating nylon bearing.

Plaintiff McLarty testified that the use of the nylon bearing was the key to his invention. He characterized the nylon bearing as being particularly adaptable to his device because of its greater ability to stand up against heat and friction. In this connection, he testified he considered the use of nylon bearings as novel in its application to his particular device. He did not consider the fact that the bearing was molded with the rest of the spinner as any part of the invention, but did consider the nylon bearing as used in his device was a new application and was the most important part of his claimed invention.

### Findings of Fact

1) Plaintiff Shirley McLarty, doing business as Plastex Molding Company, is a citizen and resident of Texas and is the patentee of Patent No. 2,797,510, issued July 2, 1957, following application therefor on February 27, 1956. The patented device is described as an advertising spinner or flutter mill.

2) Plaintiff National Banner Company is a Texas Corporation of Dallas, Texas, and its officers were the ones who suggested to McLarty the designing of the device for which a patent was ultimately issued. By agreement with McLarty, National Banner Company has the exclusive sales rights for the Whirlaway spinner of McLarty. National Banner Company had long been interested in marketing novelty advertising devices and had experience with spinners generally prior to the commencement of McLarty's designing of the patented device. Shirley McLarty continued to be the owner of the patent in question.

3) Plaintiff McLarty made his first trial run of the patented device in July,

1955, and the device was first marketed in August, 1955, by National Banner Company by sales in the City of Detroit. Other orders followed, and the McLarty spinner had a dramatic and sudden commercial success, principally in the Detroit area.

4) Defendant Jones Plastic Company is a Michigan Corporation. It does not manufacture anything, but engages in the sale of specialty items in the field of advertising. It purchased its products primarily from Detroit Plastic Company. The accused spinner marketed by Jones Plastic Company was designed by one Erikson of the Detroit Plastics Company and was manufactured by that company for Jones Plastic Company. Erik E. Erikson, Inc., was the same corporation as Jones Plastic Company. This corporation was formed in November, 1955, and changed its name to Jones Plastic Company in May, 1957, Erik E. Erikson was President of Detroit Plastics Company which was started in 1949 and was later President of Jones Plastic Company.

5) Some time in 1956, Erik E. Erikson designed the spinner later marketed by Jones Plastic Company as its "Whirlie Girlie". This Court finds that the device designed by Erikson was but an ill-concealed copy of the McLarty device which had been on sale in Detroit beginning in the fall of 1955. Jones Plastic Company had its place of business in Mt. Clemens, Michigan. This Court finds that if the McLarty patent is valid, Jones Plastic Company has been guilty of infringement.

6) This Court finds that the McLarty patent No. 2,797,510, is invalid because the claimed invention thereof was anticipated by the prior art and by public use of whatever part thereof might be claimed to be an invention. The Court further finds that whatever differences there may be between the subject matter of the McLarty patent and prior art disclosed by the evidence in this case are such that the subject matter as a whole would have been obvious at the time the invention was made, to a person having ordinary skill in the art to which said subject matter pertains.

7) At the time the McLarty device was first placed on the market, it met with immediate success and its sales permitted McLarty's productive capacities to be used to the fullest extent, producing five hundred units per day, and this production and sale continued until about the month of June, 1956, when the competition of Jones Plastic Company began to be felt. Since then, McLarty's and National Banner Company's business in the sale of the Whirlaway spinner has steadily decreased. Some of the decrease was due to a general market decline, but a major portion was due to the competition of the accused Whirlie Girlie device marketed by Jones Plastic Company. Upon the testimony offered on the subject, this Court finds that if the McLarty patent is valid, McLarty is entitled to damages from Jones Plastic Company for infringement, in the sum of $50,000.

8) The Court finds that the plaintiffs herein have not relied in their pleadings upon a claim of unfair competition and no actionable unfair competition has been shown independently of the issue of patentability and infringement.

9) The Court finds that the circumstances of this case are such that no award of attorney fees should be made to the defendant, and further finds that the processing of the application for the mentioned patent was done in good faith and the litigation was instituted and prosecuted in good faith upon the part of plaintiffs herein.

10) The Court finds that no costs should be taxed in favor of either party.

### Conclusions of Law

1) This Court has jurisdiction of the parties to this action and of the subject matter thereof.

2) All claims of the McLarty patent No. 2,797,510 are invalid.

3) No damages for unfair competition shall be awarded to the plaintiffs.

4) No attorney fees should be awarded to the defendant and no costs should be awarded to either party.